IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS

JODI A. WESSEL,

Plaintiff,

Vs.                                              No. 03-4089-SAC

ENERSYS, INC.
f/k/a YUASA, INC.,

Defendant.

MEMORANDUM AND ORDER

This employment discrimination and retaliation case comes before the

court on cross-motions for summary judgment.  Defendant seeks summary

judgment on all issues, while plaintiff seeks summary judgment only on the issue of

liability.

**Summary judgment standard**

Summary judgment is appropriate if the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if

any, show no genuine issue as to any material fact and that the moving party is

entitled to a judgment as a matter of law. Fed.R.Civ.P. 56;  *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1538-39 (10th Cir.1993).  A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law."  *Anderson*, 477 U.S. at 248.  A "genuine" factual dispute requires more than a mere scintilla of evidence.  *Id.* at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Hicks v. City of Watonga, Okla.*, 942 F.2d 737, 743 (10th Cir.1991).  Once the moving party meets its burden, the burden shifts to the non-moving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof."  *Applied Genetics Int'l, Inc. v. First Affiliated Secs., Inc.*, 912 F.2d 1238, 1241 (10th Cir.1990); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87; *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir.1991).  The non-moving party may not rest on his pleadings but must set forth specific facts.  *Applied Genetics*, 912 F.2d at 1241.  Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative.  *Anderson*, 477 U.S. at 250-51.  "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape

2

summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir.1988).  Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

All facts on which a motion or opposition is based shall be presented by affidavit, declaration under penalty of perjury, and/or relevant portions of pleadings, depositions, answers to interrogatories and responses to requests for admissions.  Affidavits or declarations shall be made on personal knowledge and by a person competent to testify to the facts stated which shall be admissible in evidence.  D. Kan. R. 56.1(d).   The Court may only consider evidence whose content or substance is admissible.  *Conoco Inc. v. J.M. Huber*, 148 F.Supp.2d 1157, 1166 (D. Kan. 2001); *Gross v. Burggraf Const. Co.*, 53 F.3d 1531, 1541 (10th Cir.1995).  "Hearsay testimony that would be inadmissible at trial may not be included." *Conoco*, 148 F.Supp.2d at 1166.  "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."  Fed. R. Evid. 602.  Statements not based on personal knowledge must be disregarded.  *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991).

**Facts**

Plaintiff, Jodi Wessel, was employed at Defendant EnerSys, Inc. ("EnerSys") from January 18, 1999 to May 2, 2001 on which date she was terminated for the stated reason of her violation of the absence policy.  EnerSys has a manufacturing facility in Hays, Kansas at which it manufactures industrial batteries.  Plaintiff began employment working the third shift but by approximately August 28, 2000, she was working the first (day) shift in the dry charge department.

EnerSys uses a point system to regulate attendance. An employee is assessed one point for each period of consecutive absence, regardless of the number of days missed.  The policy provides, as exceptions to that general rule, that no point is assessed for jury duty, military leave, absence subpoenaed by court of law, funeral leave, or Family Leave Act leave.  By practice, no point is assessed for absences due to a work-related injury. Any occurrence that is one year old drops off.  An employee who accumulates seven points twice within a rolling twelve month period is subject to discharge.

Employees of EnerSys are required to time-in and time-out when they report to and leave work on an electronic system called Chronos. The system generates a report entitled "Punch Detail," which shows the time in and out and total hours worked on a given day.

4

If the Chronos system shows an employee has not clocked in, the payroll department is alerted that an employee is absent.  Payroll then generates an attendance history report, documents the absence on the report and assesses a point to the employee for the absence.  The attendance history report is then forwarded to the employee's supervisor, who reviews the recent absences and determines whether it was appropriate to assess a point for the absence. Supervisors base this decision on information they receive concerning the reason for the employee's absence.   For example, if the employee's absence was due to jury duty, the supervisor would delete the point automatically assessed by payroll for that day, but if the employee was ill the supervisor would not remove the point.

Plaintiff's Attendance History Report shows that as of May 1, 2001, she had accumulated seven points twice in a twelve month period. She had accumulated seven points in the twelve  months prior to October 23, 2000 and in the twelve months prior to May 1,2001. The only point assessments in dispute in this case are those on April 19 and May 1, 2001.

Plaintiff was absent from work on the following days during the year prior to her termination: February 7-February 16; March 27 – March 30; April 6 and April 9; April 19, 20, 23 and 24; and May 1.  On February 6, 200, plaintiff sustained an injury at work in the dry charge department, and was transported to

5

the hospital where she remained for six days.  Plaintiff was diagnosed with a back
sprain and received an epidural. She was released from the hospital on February 12
and then recuperated at home.  Plaintiff immediately received worker's
compensation benefits in the form of hospitalization, medical treatment, physical
therapy and medication. After her injury, plaintiff filled out an employee incident
report, her supervisor signed an accident investigation report, and defendant filed
its employer's report of injury to the State of Kansas Workman's Compensation
Office.

On February 19, 2001, plaintiff returned to work with a restriction
from Dr. Bassett, an orthopedic surgeon, stating: "office work only; no lifting,
twisting, bending; no work on the "floor" – i.e., batteries."  Plaintiff was assigned
to work in the front office, where she sat at the end of a desk and filed papers.
Plaintiff saw Dr. Bassett again on March 7, 2001 and he continued her on "light
duty office work."

Pamela Gehring, a certified medical assistant who functioned as the
plant nurse, supervised work assignments for employees such as plaintiff who were
on restricted duty due to job injuries.  On Monday, March 26, Gehring removed
plaintiff from her filing work in the front office.  Plaintiff understood that this was
because other secretaries in the front office had complained that she was leaving

her work space too often.

Gehring then assigned plaintiff to a space adjoining the Engineering office and the plant floor, where she was to transfer papers from existing storage boxes to a new box.  The boxes were stored in, and plaintiff thus worked in, a locked, wire chain-link fence enclosure on the plant floor.  Plaintiff considered this duty to be punishment, and evidence that Gehring was out to get her.

Chuck Staab, an EnerSys employee in the Safety Department, placed two file storage boxes on the table in the fenced enclosure for plaintiff to work from.  Plaintiff completed transferring papers from two old boxes into two new boxes.  She then lifted the new boxes, one full and one half-full, off the table, carried them outside the enclosure and placed them on a pallet, reinjuring her back in so doing.  Plaintiff knew before she picked up the box that it might exceed her weight restrictions, but believed that Gehring had told her she was supposed to move the newly-filled boxes to a pallet.

Plaintiff then left work without informing any supervisor or manager and drove to the doctor's office, then to the emergency room because the doctor was not in his office.  Plaintiff was absent the rest of that week, but was not assessed a point for her absences.  She saw Dr. Bassett on Friday, March 30th, and was cleared for work with a restriction of "light duty office work; no

7

pushing/pulling/lifting greater than two pounds."

On April 2nd, plaintiff returned to work and was assigned office work assisting a manager.  She was absent on Friday, April 6th and Monday, April 9th because of the flu.  For those absences she was assessed one point, which she does not contest.

Plaintiff saw Dr. Bassett again on April 10th, and he noted that plaintiff could do "light duty on floor."  Plaintiff continued her office duty until April 17th.  On April 17th, plaintiff saw Dr. Bassett again, and he released her to work in the plant with no restrictions except pushing, pulling or lifting greater than 40 pounds.

The following day, plaintiff began work in the plate parting department, where her duties were to snap tabs off the edges of the plates.  Initially, she was assigned to work on plates which weighed 13.07 pounds, rather than the 40 pounds plaintiff initially believed, but was then moved to work on a lighter plate which weighed two to three pounds each.  After plaintiff complained about bending, twisting and picking up the smaller plates, the plates were moved so that she did not need to reach, and this modification was helpful. Plaintiff did not report to anyone that day that she had injured her back.

Plaintiff completed a day's work, then called in the next day, April 19th, stating that her back hurt.  Plaintiff was absent again on April 20, 23 and 24th.

Although defendant's documents do not reflect that plaintiff called in on the 20-24th, plaintiff testified that she always called in her absences.  On April 24th, plaintiff again saw Dr. Bassett who issued a work status report stating that she could work in the plant with no restrictions except pushing, pulling or lifting greater than 40 pounds.  This note made no reference to and did not excuse plaintiff's absence from April 19 to April 24.  Plaintiff was assessed one point for these absences, which she contests.

Plaintiff was absent again on May 1st, and was assessed another point, putting her over the limit of seven in the previous twelve months.  Plaintiff contends, and defendant disputes that she called in to notify defendant of this absence.  On Wednesday, May 2, plaintiff saw Dr. White, a physician of her choosing.  Dr. White's note stated that Plaintiff should not lift more than ten pounds and should not work more than five days a week, 8 hours a day, but did not state that plaintiff had been unable to work on May 1.  When plaintiff went in to work on May 2nd, she was notified that she was terminated.

The decision to terminate plaintiff was made by Doug Burr, defendant's Human Resources Manager, and Jim Pipes, defendant's Manufacturing Manager, for the stated reason that plaintiff had violated the attendance policy.  Mr. Burr and Mr. Pipes determined that the two points issued for plaintiff's absences

9

on April 19th and May 1st had been properly assessed because plaintiff had not provided any medical documentation stating that she could not work on those dates because of a work-related injury.

At no time from February 6, 2001 until May 2, 2001, did plaintiff ask the company for leave under the Family and Medical Leave Act or provide any medical certification stating she had a serious health condition and would need leave from time to time.

EnerSys received a letter from plaintiff's attorney dated April 23, 2001, stating plaintiff claimed compensation in accordance with Kansas Workers Compensation laws, as well as a letter dated April 30, 2001, stating plaintiff's intent to file a claim for workers compensation benefits. EnerSys also received a letter from this attorney dated April 30, 2001, noting that he may file for a Preliminary Hearing before the Workers' Compensation Director. It is disputed whether the decision-makers, Pipes and Burr, were aware of these letters as of May 2nd when they terminated Wessel.

**FMLA**

Plaintiff couches her FMLA claims in multiple theories - one for interference with her right to take FMLA leave, one for terminating her for attempting to take FMLA leave, and one for failing to restore her to her prior

10

position after she took leave.  The first of these theories is an

entitlement/interference theory, and the second states a retaliation theory.  The third,

however, states only a hypothetical theory which the court declines to address,

since it is undisputed that plaintiff never took FMLA leave during the relevant

period.  *See* § 2614(a)(5) (granting restoration rights only to those employees

already on FMLA leave, in stating "any eligible employee *who takes leave* ... shall

be entitled, on return *from such leave*" to specified restoration rights.)

### Entitlement theory/Notice

Plaintiff's first theory is that defendant should have designated her

absences on April 19-24th and May 1st as FMLA leave instead of terminating her.

*See* 29 C.F.R. § 825.220(c) (FMLA leave cannot be counted under 'no fault'

attendance policies.")  Under this theory, plaintiff has the burden to show

entitlement to FMLA leave, but need not show the employer's intent to interfere

with FMLA leave.  *See* 29 U.S.C. § 2612(a)(1)(D).

> Under the interference theory, if an employer interferes with an
> employee's FMLA-created right to a medical leave, it has violated the FMLA
> regardless of its intent.  *See Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298
> F.3d 955, 960 (10th Cir.2002).  In such a case, the employee must
> demonstrate her entitlement to the disputed leave.  *Id.*  The intent of the
> employer is immaterial.  *Id.*  If dismissal would have occurred regardless of
> the request for an FMLA leave, however, an employee may be dismissed
> even if dismissal prevents her exercise of her right to an FMLA leave.  *Id.*

*Bones v. Honeywell Intern., Inc*., 366 F.3d 869, 877 (10th Cir. 2004).

To establish prima facie case under this theory, plaintiff must show "that she is entitled to the protections of the FMLA and that her employer interfered with, restrained, or denied the exercise of her rights under the Act." *Mardis v. Central Nat. Bank & Trust of Enid,* 173 F.3d 864, 1999 WL 218903, *2 (10th Cir.1999).

Regarding entitlement to FMLA leave, the relevant section of the FMLA provides:

> ...an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period for one or more of the following:
> (D) Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee.

29 U.S.C.A. § 2612.  Plaintiff contends, and defendant does not dispute, that she had a "serious health condition" because of her back injury at work and resulting six-day hospitalization in February, which required continuing treatment by a physician.  *See* 29 CFR § 825.114(a)(2).

Defendant denies, however, that plaintiff's serious health condition rendered her "unable to perform the functions" of her position on the dates of her absences at issue -- April 19th- 24th and May 1st.

> "The FMLA provides for medical leave only when the applicant suffers from 'a serious health condition that makes the employee unable to

perform the functions of the position of such employee.' " *Doe v. United States Postal Serv.*, 317 F.3d 339, 345 (D.C.Cir.2003) (quoting the FMLA, 29 U.S.C. § 2612(a)(1)(D)).

*Bryant v. American Airlines, Inc.*, 75 Fed.Appx. 699, 701, 2003 WL 22025514, *1 (10th Cir.2003). Plaintiff's absences on the dates in question are not protected by the FMLA unless there is evidence from which a reasonable jury could find that her back problems kept her from performing the functions of her job on those dates. *See Gudenkauf v. Stauffer Communications, Inc.*, 922 F.Supp. 465, 475 (D.Kan.1996) (holding employer's refusal to grant leave did not violate the FMLA where the employee failed to prove that her condition "kept her from performing the functions of her job"); *Barnhill v. Farmland Foods, Inc.*, 2001 WL 487939, *5 (D.Kan. 2001), *citing Martyszenko v. Safeway, Inc.*, 120 F.3d 120, 123 (8th Cir.1997) (recognizing that courts have uniformly "required a showing of incapacity" in applying the FMLA); 29 C.F.R. § 825.114(a)(2)(i)( plaintiff must show she was unable to work or that her absence was "due to" her illness).

To make this showing, plaintiff relies solely upon her testimony that she told defendant on the mornings of April 19th, 2001, and May 1st, 2001 that her absences were necessitated by work-related injury. Defendant disputes that testimony, and further relies upon the contradictory notes from plaintiff's physicians, plus the lack of any corroborating medical evidence that plaintiff was

13

incapacitated on the relevant dates.

The medical evidence shows that plaintiff's absences in question were "bookended" by doctor's releases indicating that plaintiff could in fact work, with certain restrictions.     The physician's "work status report" dated April 17th states that plaintiff can "return to work" with the following restrictions in an 8 hour day: "No pushing/pulling/lifting greater than 40 lbs."  Dk. 43, Exh D, 00019.  That same form states that plaintiff has no restrictions in standing or walking, weight bearing, kneeling or squatting, sitting, bending, repetitive hand motions, or overhead reaching.  *Id.*

The physician's notes to the file are consistent, in stating on April 17th, "we will release her to work with a 40 lb. weight restriction and will see her back here in a month."  An undated "addendum" to that same note states:

> Jodi's exams have been essentially normal with no signs of pathology.  She has no documentable impairment.  We will release her to full duties in a month.  She was fired from her job because of politics at her job.  This is not a reflection of her back injury, which has healed.  We will release her to full activities in a month.

Dk.43, Exh. F, 00026.  The physician's work status report dated April 24th is similar in stating that plaintiff can "return to work," with the only restriction being on pushing, pulling or lifting greater than 40 pounds.  Dk. 43, Exh D, 00019.

Regarding her final absence, plaintiff testified that she called Gehring

14

Monday morning, May 1st, explained that her back was hurting and that she wasn't going to be able to work.  Plaintiff told Gehring that she had an appointment with Dr. White the next day.  *Id.*, p. 226-227. She additionally states that she "provided a doctor's note to Doug Burr on May 2, 2001."  *Id*, p. 53.  That note, however, makes no reference to plaintiff's absence on May 1st.  Instead, the note from Dr. White states only:

> Ms. Wessel should not lift more than 10 lbs.  She may not work longer than 8 hours a day nor more than 5 days per week. Duration of restriction unknown.

Dk. 43, Exh. D #00021.  Plaintiff admits that Dr. White conveyed by this note that she could work a full shift five days a week, but should not lift more than ten pounds.  Dk.53, Exh E., plaintiff's depo. p. 233-34. This note failed to advise plaintiff to remain off work on May 1st, or to excuse plaintiff's absence on that date, and fails to demonstrate that plaintiff was unable to perform the functions of her job in light of her health condition.

The undisputed medical evidence thus shows that plaintiff was able to work with restrictions on the dates in question.  Plaintiff's conclusory and contradictory testimony that she was not able to work on those dates  is insufficient to create a genuine question of material fact regarding her entitlement to intermittent

15

FMLA leave.[1]  *SeeBrannon v. OshKosh B'Gosh, Inc.*  897 F.Supp. 1028, 1037

(M.D.Tenn. 1995) ("plaintiff's own testimony that she was 'too sick to work' is

insufficient to prove that her absence was necessary"); *Stiefel v. Allied Domeco*

*Spirits & Wine U.S.A., Inc*., 184 F.Supp.2d 886, 891 (W.D.Ark. 2002) (plaintiff's

testimony that "she felt bad and couldn't work" was insufficient to show that her

condition was related to a serious health condition requiring hospitalization several

months earlier, where record contained no opinion from a health care provider to

support that medical conclusion, and plaintiff was not qualified to render a medical

opinion.)

Thus plaintiff has not raised a material question of fact that her

absences on the relevant dates, or any of them, were protected by the FMLA.

Consequently, defendant's failure to designate plaintiff's absences in question as

FMLA leave does not violate the FMLA.[2]

---

[1]The FMLA permits an employee whose serious health condition renders her
unable to perform her job to take leave "intermittently or on a reduced leave
schedule when medically necessary."  29 U.S.C. § 2612(b)(1).  Even assuming,
*arguendo*, that plaintiff's incapacity during her hospitalization was sufficient to
meet the requirement that she be unable to work, plaintiff has not raised a genuine
issue that her subsequent absences were medically necessary.

[2]The court finds it unnecessary to address the defense that plaintiff failed to
give defendant sufficient notice of her FMLA-qualifying circumstances to trigger
defendant's duty to inquire further.

**FMLA retaliation**

The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a).

> To establish a prima facie FMLA retaliation claim, a plaintiff must show that (1) she availed herself of a protected right under the FMLA, (2) an employment decision adversely affected her, and (3) a causal connection between the two actions exists. *Morgan v. Hilti, Inc*., 108 F.3d 1319, 1325 (10th Cir. 1997). Once a prima facie case of discrimination is established, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for plaintiff's termination. If the defendant can do so, the burden shifts back to the plaintiff to produce evidence the employer's reason is a pretext for the retaliatory reason. *Id.* "A plaintiff can demonstrate pretext by showing weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's reasons for its action, which a reasonable fact finder could rationally find unworthy of credence." *Richmond v. ONEOK, Inc*., 120 F.3d 205, 209 (10th Cir. 1997).

*Chavez v. Thomas & Betts Corporation*, __ F.3d __, 2005 WL 139155, (10th Cir. Jan. 24, 2005).

Because plaintiff has failed to show that she engaged in activity protected under the FMLA, plaintiff cannot make a prima facie case of retaliation under this statute.

**Supplemental jurisdiction**

In an action over which it has federal question jurisdiction, a federal court may exercise supplemental jurisdiction over state law claims which form part

17

of the same case or controversy.  *See* 28 U.S.C. § 1367(a).  The court may decline

to exercise supplemental jurisdiction over a state law claim when it has dismissed all

claims over which it has original jurisdiction.  *See id.* § 1367(c)(3).  "The exercise

of supplemental jurisdiction is therefore discretionary."  *Gold v. Local 7 United*

*Food and Commercial Workers Union,* 159 F.3d 1307, 1310 (10th Cir. 1998).

When deciding whether to exercise supplemental jurisdiction, a federal court should

consider and weigh in each case, and at every stage of the litigation, the values of

judicial economy, convenience, fairness, and comity.'  *Id.* (internal quotations and

citations omitted.)   Given these considerations, and because the court is already

familiar with the record from its examination of the FMLA claims, the court will

exercise supplemental jurisdiction and consider plaintiff's state law claim.

### Retaliatory discharge

In order to establish a prima facie case of retaliatory discharge under

Kansas law, a plaintiff must prove the following:

> (1) she filed a claim for workers' compensation benefits or sustained an
> injury for which she might assert a future claim for benefits; (2) defendants
> had knowledge of her workers' compensation claim or of her sustaining a
> work-related injury for which she might file a future claim for benefits; (3)
> defendants terminated her employment; and (4) a causal connection exists
> between her termination and her protected activity or injury.  *See Foster v.*
> *Alliedsignal, Inc*., 293 F.3d 1187, 1193 (10th Cir. 2002); *Sanjuan v. IBP,*
> *Inc*., 160 F.3d 1291, 1298 (10th Cir. 1998).

*Bones*, 366 F.3d at 875.

Defendant admits that for purposes of this motion plaintiff can establish the first three elements of a prima facie case, but challenges the fourth - causation.

> To establish the requisite causal connection, a plaintiff must prove an unlawful intent on the part of the employer to terminate her because she had filed a workers' compensation claim or had sustained a work-related injury for which she might file such a claim. *See Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1116 (10th Cir.2001).

*Bones*, 366 F.3d at 876.

Temporal proximity is often used to prove causation. *See  Meiners v. University of Kansas*, 359 F.3d 1222, 1231 (10th Cir. 2004).  The parties raise interesting questions relating to which date the court should use for purposes of calculating the passage of time between plaintiff's protected activity and plaintiff's termination.  Because of other evidence of record, however, the court finds it unnecessary to determine which protected activity provides the governing date for purposes of the temporal proximity analysis relative to causation.

The court finds sufficient evidence of causation for purposes of a prima facie case in the testimony of Mr. Burr, one of the decision-makers, that he fired plaintiff despite her having told him that her absences were due to a work-related injury.  His deposition states:

Q.  So, with respect to the points that Ms. Wessel was assessed for April 19th, 2001, and May 1st, 2001, she told you that those absences were necessitated by work-related injury, correct?

A.  Yes.

Q.  And in spite of that information that was provided you by Ms. Wessel, you fired her, correct?

A.  Yes.

Q.  Now, had it not been for the points assessed to Ms. Wessel for April 19th, 2001 and May 1st, 2001, she should not have been fired for absences, correct?

A.  Yes.

Q.  In other words, what put her at termination level would have been the points that she got assessed for the absences related to April 19th, 2001 and May 1st, 2001, correct?

A.  Yes.

Q.  If you knew that it was illegal to fire an injured employee for absences that you knew or should have known were necessitated by a work-related injury, why did you fire Ms. Wessel for such absences?

A.  Obviously they were not related to work comp.

Q.  And where did you get that from?

A.  From the information she provided on April 19th and May 1st.

Q.  And that information was that her absences were necessitated by her work injuries, correct?

A.  Only as presented by her.

Q.  Okay.  Did you have anyone else that presented to you evidence or information that these absences were not necessitated by [her] work-related injuries?

A.  No.

Q.  Upon what basis do you claim that the absences for which Ms Wessel was charged a point for April 19th, 2001, were not necessitated by her work-related injury?

A.  As it states here, she stated it was work-related, but no documentation was presented.

Dk. 53, Exh. D, Burr depo., p. 121-24.

When all reasonable inferences are drawn in plaintiff's favor, this

20

testimony raises a triable issue of fact as to whether defendant assessed points for

absences which it knew or should have known were due to a work-related injury.

Plaintiff has thus sufficiently made a retaliatory discharge claim for purposes of her

prima facie case.

The burden thus shifts to defendant to show an articulate,

non-retaliatory reason for the discharge. *Sanjuan v. IBP, Inc*., 160 F.3d 1291,

1298 (10th Cir.1998). Defendant states that its reason for plaintiff's termination

was because her absences exceeded the maximum permitted in its absence policy

and were unsupported by medical documentation. *See* Dk. 53, Exh. D, Burr depo.,

p.123-24; 213-14. This is sufficient to raise a triable issue as to defendant's

proffered legitimate, non-retaliatory reason for discharging plaintiff. *See Bausman*,

252 F.3d at 1120.

The burden thus shifts back to the plaintiff to produce evidence the

employer's reason is a pretext for the retaliatory reason. Mere conjecture that

defendant's explanation is a pretext is an insufficient basis for denial of summary

judgment. *See Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th

Cir.1988).

 Pretext can be shown by " 'such weaknesses, implausibilities,
inconsistencies, incoherencies, or contradictions in the employer's proffered
legitimate reasons for its action that a reasonable factfinder could rationally

find them unworthy of credence and hence infer that the employer did not act
for the asserted non-discriminatory reasons.' " *Olson v. General Elec.
Astrospace*, 101 F.3d 947, 951-52 (3d Cir.1996) (quoting *Fuentes v. Perskie*,
32 F.3d 759, 765 (3d Cir.1994) (further citation omitted)). *Id.*

*Bausman*, 252 F.3d at 1120.

The record must support a reasonable inference of retaliatory intent by

the decision-makers.  Plaintiff must show that, at the time of her discharge, "the

decision-makers who terminated her employment were aware or should have been

aware that the absences for which she was discharged were the result of a

work-related injury.  *Foster*, 293 F.3d at 1193."  *Bones*, 366 F.3d at 876.  This

"knew or should have known" standard "charges an employer with knowledge of

those facts concerning an employee's workplace injury reasonably available to the

employer at the time."  *Bausman,* 252 F.3d at 1121-22.  This "rule of reason" must

be applied even-handedly in balancing the interests of both the employer and its

employees.  *Id.*

Plaintiff contends this burden is met because she told Burr, as he

admits, that her relevant absences were necessitated by a work-related injury.

Defendant counters that Burr did not believe that plaintiff's absences were related

to a work injury because plaintiff did not provide medical documentation in support

of her assertion, thus Burr knew that plaintiff's absences for which she was

discharged were not the result of a work-related injury.

Defendant had no written policy requiring a medical release for absences of three days or less.  Nonetheless, Burr testified that it was common practice for employees to produce a doctor's note for absences due to illness, Burr depo. p. 67-72, and plaintiff admits that she knew when she missed work because her back hurt, she was supposed to have a doctor's note that said she was off work because of her back, Wessel depo. p. 179-80.  Plaintiff further admits that she had no such notes for the dates of her absences in question.  *Id.*, p. 201.

As this court reads *Bausman*, which bears some similarity to this case, neither plaintiff's statement, nor her failure to produce a doctor's note is *per se* controlling on this issue.  The court believes that an employer's request for corroboration by a medical professional of an employee's claim of absence due to an injury is an objective and reasonable means of investigating and verifying the reason for an employee's absence.  Nonetheless, under the circumstances presented here, the employer is not justified in relying solely upon an employee's failure to produce a doctor's excuse, in determining that an absence is unjustified.  Rather, the employer is bound to consider and act upon all the facts it knows or should know, not only upon its unwritten practice such as a requirement that one produce a doctor's excuse for a work-related absence.  *See Bausman*, 252 F.3d at

1122.   Conversely, the employer need not merely accept at face value an

employee's statement.  Instead, an employer may see, hear, or know something

which would cause it to discount or reject an employee's assertion of absence due

to a work-related injury.  *Id.*

Defendant points to no fact other than plaintiff's failure to produce

medical verification which caused it to discredit plaintiff's assertion that her

absence was necessitated by a work-related injury.  Here, as in *Bausman*, this alone

is insufficient.[3]

> If absent third-party verification an employer would discount or reject an
> employee's assertion of work-related injury, then the request for verification
> should be explicit and unequivocal, leaving no uncertainty as to the
> information that is required. Otherwise, the practice merely becomes a trap
> for the unwary--a trap that could be relied upon to mask an employer's
> unlawful retaliatory intent...

*Bausman*, 252 F.3d at 1122.

Plaintiff's brief includes other indicia of pretext which, when

considered in the light most favorable to plaintiff, and coupled with the factors

discussed above, demonstrate a genuine dispute of material fact as to whether the

proffered reasons were unworthy of belief.  Plaintiff has not conclusively

---

[3]Burr does not claim to have relied upon medical evidence in support of his
belief that plaintiff's absences were not work-related.

demonstrated, however, that defendant's rationale was pretextual, or that she is

otherwise entitled to judgment in her favor on this claim.

IT IS THEREFORE ORDERED that defendant's motion for

summary judgment (Dk. 41) is granted as to plaintiff's FMLA claims and is denied

as to plaintiff's state law claim.

IT IS FURTHER ORDERED that plaintiff's motion for partial

summary judgment (Dk. 44) is denied.

Dated this 17th day of February, 2005, at Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge